UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES ALTMAN<br><br>         Plaintiff,<br><br>v.<br><br>RICHARD S. DIPRETA and the DIPRETA LAW FIRM LLP,<br><br>         Defendants. | Docket No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Charles Altman ("Mr. Altman") as and for his Complaint against defendants Richard S. DiPreta ("DiPreta") and the DiPreta Law Firm LLP ("The DiPreta Law Firm", referred to collectively with DiPreta as "Defendants"), states as follows:

## NATURE OF THIS ACTION

**1.** This is civil action for declaratory relief under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. Plaintiff also seeks compensatory, statutory, and punitive damages against Defendants DiPreta and The DiPreta Law Firm for related violations of New York Judiciary Law § 487.

**2.** DiPreta, individually, and as a member of The DiPreta Law Firm, made material, deceitful and egregious false statements to the Sullivan County Supreme Court and Sullivan County Surrogate's Court. DiPreta's false statements were made to impugn Mr. Altman's integrity as a fiduciary, for the purpose of removing Mr. Altman as executor of his mother's estate and, concomitantly, to advance Defendants' interests adverse to those of a turnover proceeding commenced by Mr. Altman (seeking financial recovery for the Estate from Defendants).

1

3. The egregious, deceitful false statements made to those tribunals were only a small part of Defendants' years-long effort to exhaust the funds of Mr. Altman's late mother, Jeanne Altman ("Jeanne" or "Jeanne's Estate"), for Defendants' own pecuniary gain.

4. Among other things, in connection with a Supreme Court guardianship proceeding, DiPreta made material misrepresentations to the court in an effort to retain control of Jeanne's property and prevent disclosure of his actions in terminating Jeanne's healthcare.

5. Defendants misrepresented that Jeanne had competent counsel in New York when, in truth, the attorney Defendants claimed was Jeanne's court recognized counsel had been previously terminated as her counsel and was not licensed to practice in New York State (and thus could not appear in the proceedings to advocate for Jeanne).

6. Defendant later submitted an improper ex parte letter – which contained numerous material falsities – to the Sullivan County Surrogate's Court in an effort to persuade that court to reconsider a Turnover Order entered against DiPreta and to revoke Mr. Altman's letters testamentary. These acts comprised egregious, deceitful acts undertaken in a chronic and extreme course of legal delinquency, all in violation of Judiciary Law § 487.

7. Most recently, DiPreta committed additional acts in violation of Judiciary Law § 487 and abused the judicial process by filing a false and misleading proof of claim in a Chapter 11 bankruptcy proceeding commenced by Mr. Altman in the Southern District of New York, seeking $121,661.00 from Mr. Altman despite having collected $64,000.00 from Jeanne's Estate.

8. Now, Mr. Altman seeks declaratory relief from this Court relative to the legitimacy of Defendant's asserted "claim" against Mr. Altman.

9. Defendant's actions in filing a notice of claim September 24, 2020 and DiPreta's January 22, 2021 statements made during a hearing in the Southern District of New York give rise to a justiciable case or controversy ripe for review by this Court.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this proceeding under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 because there is a justiciable case or controversy where Plaintiff and Defendants have adverse interests. As such, a declaration of the rights of the parties is necessary and warranted.

11. Venue is proper pursuant to 28 USC § 1391(b)(2) because a substantial part of the events and omission giving rise to the claim occurred in the Southern District of New York. Indeed, Defendants filed their false and misleading claim in a bankruptcy proceeding within this District.

## PARTIES

12. Mr. Altman was and still is a natural person domiciled in, and with a residence in the State of New York, County of Westchester.

13. DiPreta was and still is a natural person residing in the State of Connecticut.

14. DiPreta is an attorney duly admitted to practice law in the State of Connecticut.

15. The DiPreta Law Firm was and still is a limited liability partnership operating as a law practice, with a principal place of business at 21 Sherwood Place, Greenwich, Connecticut.

16. Upon information and belief, DiPreta and his wife, Cynthia Andrews DiPreta, Esq., ("Cynthia") are the only members of the DiPreta law firm.

17. Upon information and belief, Cynthia is duly admitted to practice law in the State of New York.

# THE FACTS

### A. The Guardianship of Jeanne Altman

18. DiPreta's actions were taken both as an attorney and as a member of The DiPreta Law Firm during the course of litigation in the courts of New York, including: Supreme Court Sullivan County, Surrogates Court Sullivan County and the Appellate Division, Third Department.

19. Mr. Altman's mother, Jeanne, began to develop dementia in 2011.

20. Jeanne was a lifelong New York resident and had established her domicile there, but for a time beginning in 2011, Jeanne relocated to Greenwich, Connecticut.

21. By April 2012 Jeanne's condition was such that she required assistance managing her affairs.

22. Mr. Altman was Jeanne's healthcare proxy and held a durable power of attorney, for his mother under New York law.

23. However, conflict arose with Jeanne's other adult son (who lived in Pennsylvania) who also held had a durable power of attorney, for Jeanne under New York law.

24. Mr. Altman sought advice from a Connecticut attorney, Richard Slagle, Esq. ("Slagle").

25. Slagle advised that Mr. Altman seek a temporary conservatorship for Jeanne in the Probate Court for Greenwich, Connecticut.

26. Slagle further suggested that Mr. Altman retain Slagle to represent Jeanne in the proceeding utilizing Jeanne's power of attorney.

27. Mr. Altman and his brother were appointed co-conservators of Jeanne's estate.

4

28. Mr. Altman was appointed conservator of Jeanne's person.

29. Connecticut law provides that a temporary conservatorship lasts for 60 days.

30. At such time Connecticut law also provided that immediately upon the establishment of a temporary conservatorship, all powers of attorney in Connecticut are vitiated.

31. The effect of Slagle's advice (to apply for a temporary, rather than permanent conservatorship) was that after 60 days there was no one in Connecticut to legally act on Jeanne's behalf, and accordingly, Mr. Altman sought a permanent conservatorship in the Greenwich Probate Court.

32. In December, 2012 Mr. Altman was appointed conservator of Jeanne's person and DiPreta was appointed conservator of her property.

33. In July 2013, Jeanne's condition was such that she required assistance with all of her activities of daily living.

34. Although DiPreta had no authority over Jeanne's person or health care, he sought to have Jeanne placed in a Greenwich nursing facility.

35. Mr. Altman, as conservator of Jeanne's person and her agent under her New York health care proxy, consulted with medical professionals in Connecticut and New York.

36. It was determined that it was in Jeanne's best interest to relocate her to a senior care facility in White Plains, New York.

37. Mr. Altman returned Jeanne to New York on July 29, 2013, and the next day informed the Greenwich Court and DiPreta of her location and the plans to move back to the facility in White Plains, the following week.

38. The relocation was scheduled for August 7, 2013.

39. On the morning of August 2, 2013, DiPreta preemptively terminated Jeanne's around-the-clock care without providing any notice to Mr. Altman (notwithstanding that Mr. Altman had coordinated Jeanne's care).

40. As a result of DiPreta's unannounced termination of her care, Jeanne was left without the personal assistance of the aides she relied upon.  Very shortly thereafter, Jeanne fell – injuring her neck and requiring hospitalization.

41. Jeanne was discharged from the hospital to a rehabilitation facility in Sullivan County, New York.

42. Although Jeanne remained in New York, DiPreta retained control over her property by virtue of the Connecticut conservatorship order appointing him conservator of her property.

43. Despite retaining control over Jeanne's finances, DiPreta apparently failed to discharge Jeanne's obligations.

44. Ultimately, the rehabilitation facility rendering services to Jeanne was not paid for such services by Defendants. As a result, the facility commenced a Mental Hygiene Law Article 81 guardianship proceeding in Sullivan County Supreme Court.

45. To ensure Defendants remained in control of Jeanne's property, DiPreta made false statements to the court evaluator appointed in the Article 81 proceeding, Steven Mogel, Esq., about the events of July 29 to August 3, 2013 in an effort to impugn Mr. Altman.

46. Specifically, DiPreta stated that Jeanne had been secretly removed from Connecticut and that her whereabouts in New York State were unknown from July 29 to August 3, 2013.

47. DiPreta's statement was false because, in fact, DiPreta knew exactly where Jeanne was located during the period in question.

48. At a July 30, 2013, a hearing was held by the Connecticut Probate Court. At that hearing, Mr. Altman advised the Court that Jeanne had been relocated to New York from Connecticut and that her placement in the Esplanade senior care facility was scheduled for August 7, 2013.

49. DiPreta was present at the hearing and saw a photograph of Jeanne in New York.

50. DiPreta made the false statements with the intent to deceive Mogel who, as the court appointed evaluator, was commissioned to issue a report and recommendation to the Supreme Court concerning Jeanne's need for a guardianship (and who to appoint as guardian).

51. DiPreta made the false statements in New York in the course of proceedings and litigation in New York to enable Defendants to remain in control of Jeanne's property and finances, and to eliminate and remove Mr. Altman from any further involvement in New York in his mother's affairs (including litigation against DiPreta).

52. Upon information and belief, Mogel relied upon the false statements made by DiPreta and, as a result, authored a report to the Sullivan County Supreme Court that favored DiPreta and was exceptionally critical of Mr. Altman.

53. Based at least in part upon a recommendation made upon the false statements of DiPreta, in March 2014, DiPreta was appointed guardian of Jeanne's property by the Sullivan County Supreme Court (and, by placing her under guardianship there, deemed DiPreta a resident of Sullivan County, New York).

54. As stated below in further detail, DiPreta would later incorporate Mogel's report – which included his own false statements – to the Sullivan County Surrogate's Court in an effort to vacate a turnover order entered against him and in favor of Mr. Altman.

55. DiPreta's appointment was made over Mr. Altman' objection and opposition thereto.

56. DiPreta continued as Jeanne's property guardian until she passed away more than a year later.

### B. DiPreta's False and Deceitful Ex Parte Statements to the Sullivan County Surrogate's Court

57. Jeanne died on April 24, 2015.

58. Her Will named Mr. Altman as the sole Executor of her Estate.

59. Mr. Altman was granted temporary letters testamentary on May 20, 2015.

60. As of September 2015, DiPreta had failed to turnover any of Jeanne's funds, including funds in a bank account where he had disclosed a balance of approximately $74,000 in filings in Sullivan County Supreme Court, and over which he exercised possession and/or control as guardian of her property.[1]

61. As a result, in September 2015, Mr. Altman commenced a turnover proceeding on behalf of Jeanne's Estate seeking recovery belonging to the estate property from DiPreta.

62. DiPreta appeared in Sullivan County Surrogate's Court and defended against the turnover proceeding.

---

[1] Under New York Mental Hygiene Law Article 81.44, DiPreta was obligated to turn over assets of Jeanne Altman's guardianship estate that were in his possession to the executor of her estate (Mr. Altman) within 150 days after Jeanne's death.

63. Jeanne's Will was admitted to Probate without opposition in Sullivan County Surrogate's Court on December 10, 2015.

64. Mr. Altman was granted permanent letters testamentary on December 29, 2015.

65. During the pendency of the turnover proceeding, on or about February 2, 2016, Defendants withdrew $64,000 from Jeanne's checking account.

66. Upon information and belief, Jeanne's $64,000 was deposited in an account maintained by DiPreta or The DiPreta Law Firm.

67. DiPreta did not disclose the taking of the $64,000 to Mr. Altman.

68. On February 11, 2016 the Surrogate Frank LaBuda issued a Decision and Order directing the turnover of all of Jeanne's assets in the possession of DiPreta or The DiPreta Law Firm – including the funds in the aforementioned bank account – to Mr. Altman as Executor of Jeanne's estate.

69. In response, on or about February 18, 2016, Defendants sent an ex parte letter to the Surrogate's Court.

70. Defendants did not send or provide Mr. Altman with a copy of the Defendants' letter at the time it was submitted to the Surrogate's Court. As a result, Mr. Altman did not have the opportunity to timely respond to Defendants' letter.

71. Despite Mr. Altman's request after he learned of the letter's existence, DiPreta still did not furnish a copy of the ex parte letter to Mr. Altman.

72. DiPreta's communication was made on an ex parte basis, during the pendency of litigation, with the intent to deceive and gain an unfair advantage in the turnover proceeding.

73. The letter contained deceitful, egregious, chronic and extreme false and material misstatements of fact, omitted material facts and contained improper statements, including but not limited to:

- He did not disclose that bank account assets made subject to the Order rendered in the turnover proceeding had been surreptitiously withdrawn from that account and deposited into a different account by DiPreta on February 2, 2016;

- Incorporating by reference the false statements DiPreta made to Mogel, the court evaluator in the guardianship, concerning Mr. Altman and the events of July 29 to August 3, 2013; and

- Suggesting that Mr. Altman was unfit to continue as executor of Jeanne's estate by virtue of certain out-of-context excerpts provided in the letter, none of which bore relevance to the administration of the property interests of the decedent's estate.

74. DiPreta sent the ex parte letter with the intent to deceive the Surrogates Court and Judge Frank LaBuda and persuade Judge LaBuda to reconsider and revoke his February 11, 2016 Decision and Order in the turnover proceeding. This deceitful filing was egregious and comprised a chronic and extreme pattern and in a delinquent course of conduct as an attorney during a litigation.

75. DiPreta sent the ex parte letter with the intention to persuade and influence Surrogate LaBuda to remove Mr. Altman as Executor of Jeanne's Estate, and thereby deprive Mr. Altman of his ability to prosecute any litigation on behalf of Jeanne's Estate against DiPreta or The DiPreta Law Firm.

76. DiPreta sent his letter on an ex parte basis in order to deceive the court and deprive Mr. Altman of due process or an opportunity to be heard with respect to the false statements made in the letter.

77.     Astonishingly, based upon Defendants' ex parte letter, Surrogate LaBuda issued a new Order that voided his February 11 Decision and Order and revoked Mr. Altman's letters testamentary, thus removing Mr. Altman as executor of Jeanne's Estate.  Next, Surrogate LaBuda promptly recused himself.

78.     Despite Mr. Altman's request after he learned of the letter's existence, Judge LaBuda did not furnish Mr. Altman with a copy of the ex parte letter until May 25, 2016.

79.     In March 2016, Defendants, Cynthia and Slagle sought a decree from the Greenwich Connecticut Probate Court awarding them fees for legal and administrative services purportedly rendered to Jeanne after she had returned to New York.

80.     Defendants' fee request was made nearly three years after the Connecticut conservatorship over Jeanne had terminated by operation of law.

81.     Defendants' fee request was made in Connecticut, despite their actual knowledge that Jeanne's estate was being probated in New York.

82.     Mr. Altman was not served with process.

83.     Westchester County Social Services (which expended more than $150,000 for Jeanne's care in New York) was not provided with any notice of Defendants' request for a decree assessing fees against Jeanne's Estate.

84.     The Greenwich Probate Court had actual and constructive knowledge that Jeanne had died in 2015 and that her estate was being probated in New York.

85.     A hearing in regard to the fee applications was held on April 25, 2016, with only Defendants, Cynthia, and Slagle in attendance.

86.     At the hearing Defendants failed to inform the Greenwich Probate Court that they had collected $64,000 from Jeanne's estate on February 2, 2016.

87. Ultimately, on August 3, 2016 a decree related to those fees (the "August 3, 2016 Decree") appears to have been entered in the Greenwich Probate Court awarding legal and administrative fees from Jeanne's estate to Defendants, Cynthia and Slagle and making Mr. Altman responsible for a surcharge of $121,661 of those fees so as "to make the estate whole".

88. No judgment against Mr. Altman was sought or entered after the August 3, 2016 Decree was rendered.

89. In fact, Defendants took no action to enforce their supposed rights to collection from Mr. Altman until they received notice of Mr. Altman's 2020 Bankruptcy proceeding.

### D. Defendants' File a False and Misleading Notice of Claim in Mr. Altman's Bankruptcy

90. On March 23, 2020 Mr. Altman filed a voluntary petition under Chapter 11 of the Bankruptcy Code (Case No.: 20-22425 (RDD)).

91. Mr. Altman was authorized to manage his estate as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

92. On September 24, 2020, DiPreta filed a proof of claim on behalf of Defendants against Mr. Altman, seeking $121,661.00 (the "Proof of Claim").

93. Defendants Proof of Claim was premised upon the August 3, 2016 Decree.

94. Defendants failed to advise the United States Bankruptcy Court in and for the Southern District of New York concerning offsets to the $121,661.00 claim, including the $64,000.00 that was collected from Jeanne's estate on February 2, 2016.

95. Mr. Altman filed an objection to Defendants' claim on December 21, 2020.

96. On January 14, 2021, DiPreta filed an opposition to the objection on behalf of Defendants.

97. A hearing was held before the Honorable Robert D. Drain on January 22, 2021 with respect to the objection to the Defendants' claim.

98. Ultimately, a motion by the United States Trustee to dismiss the Chapter 11 proceeding (because Mr. Altman was able to pay his debts and was not insolvent) was granted without adjudication of the legitimacy of Defendants' purported claim.

## AS AND FOR A FIRST CAUSE OF ACTION

99. Plaintiff repeats and realleges the preceding paragraphs of this Complaint with the same force and effect as if stated herein.

100. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, vests this Court with authority to declare the rights and other legal relations of the parties to this dispute.

101. An actual controversy has arisen and now exists between Mr. Altman, on the one hand, and Defendants on the other hand, concerning the respective rights of the parties.

102. Specifically, Defendants have claimed they are entitled to collect $121,661 in legal and administrative fees from Mr. Altman.

103. Mr. Altman objected to and disputed Defendants' right to collect those fees from him.

104. Mr. Altman's objection was based, among other things, on:

   a. The Connecticut Probate Court's lack of jurisdiction over a proceeding to determine legal and administrative fees to be awarded to Defendants, given the termination of the Connecticut Conservatorship, Jeanne's death and the probate proceeding in the State of New York;

    b.  Defendants' failure to serve Mr. Altman with process regarding the hearing which resulted in the Connecticut Probate Court rendering the August 3, 2016 Decree; and

    c.  Defendants' failure to advise the Connecticut Probate Court (or Bankruptcy Court in and for the Southern District of New York) that they had collected $64,000.00 from Jeanne's estate on February 2, 2016.

105.    Mr. Altman therefore seeks a declaration of the parties' respective rights and obligations, and requests that the Court declare that the Notice of Claim filed by Defendants in the bankruptcy proceeding was fraudulent.

106.    Mr. Altman therefore seeks a declaration of the parties' respective rights and obligations, and requests that the Court declare that the Notice of Claim was filed in violation of 18 U.S.C. §§ 152, 157 and 3571.

## AS AND FOR A SECOND CAUSE OF ACTION

107.    Plaintiff repeats and realleges the preceding paragraphs of this Complaint with the same force and effect as if stated herein.

108.    New York Judiciary Law § 487 provides that "[a]n attorney or counselor who…[i]s guilt of any deceit or collusion…with intent to deceive the court or any party…forfeits to the party injured treble damages, to be recovered in a civil action."

109.    DiPreta, acting as an individual attorney and on behalf of The DiPreta Law Firm, violated New York Judiciary Law § 487 by engaging in a chronic and extreme pattern of legal deficiency involving egregious collusion, with the intent to deceive courts located in the State of New York, court personnel and opposing parties during litigation and proceedings.

110. DiPreta's deceit and violations include, but are not limited to sending a false and deceitful, chronic and extreme ex parte communication to the Sullivan County Surrogate's Court in an effort to obtain a favorable outcome in the turnover proceeding without affording Mr. Altman an opportunity to respond to Defendants' communications.

111. The ex parte communication included false statements and incorporated prior false statements that DiPreta previously had made in other proceedings before other courts.

112. Defendants' conduct was part of a pattern of chronic and extreme egregious legally delinquent conduct intended to deceive the court, court personnel and other parties to litigation, with the intention of providing Defendants' an advantage in the turnover proceeding.

113. Defendants wrongful conduct continued through, and included, the failure to disclose the $64,000 collected from Jeanne's Estate in the Notice of Claim, as well as false and misleading statements made to Judge. Robert D. Drain during a January 22, 2021 hearing regarding the Notice of Claim.

114. Defendants' wrongful and deceptive acts in violation of Judiciary Law § 487 proximately caused injury and damages to Mr. Altman.

115. The financial injury consisted of the loss of estate funds, loss of estate commissions, loss of attorney fees, the requirement of further attorney fees, the delay in administration of the estate, the increase in administration fees and other financial losses.

116. By reason of Defendants' violations of New York Judiciary Law § 487, Mr. Altman has suffered compensable harm and is entitled to recover actual damages, treble damages, attorneys' fees and costs in excess of the jurisdictional requirements of this court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Mr. Altman demands judgment jointly and severally against DiPreta, individually and against The DiPreta Law Firm, as follows:

A. Declaring that the Notice of Claim filed by Defendants in the Bankruptcy Proceeding was fraudulent;

B. Declaring that the Notice of Claim was filed in violation of 18 U.S.C. §§ 152, 157 and 3571;

C. Declaring that Defendants violated New York Judiciary Law § 487;

D. Damages in an amount to be determined at trial;

E. Treble damages pursuant to New York Judiciary Law § 487;

F. Disbursements, costs and attorneys' fees; and

G. Such other and further relief as the Court may deem just and proper.

Dated: January 27, 2022

Respectfully submitted,

**Falcon Rappaport & Berkman, PLLC**

/s/Paul M. O'Brien
By:     Paul M. O'Brien (PO1990)

*Attorneys for Plaintiff Charles. Altman*

1185 Avenue of the Americas, 3rd Floor
New York, New York 10036

*All mail to:*
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570